# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LEVANDER MCCLELLAN, | ) | Case No. 5:18-cv-01003-JJH |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| WARDEN, DAVID MARQUIS, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.    Introduction

Levander McClellan, Petitioner, seeks a writ of habeas corpus under 28 U.S.C. § 2254. McClellan, an Ohio prisoner, is currently serving a nine-year prison term for trafficking in cocaine under Ohio law. He asserts nine grounds for relief. Respondent David Marquis, Warden, filed a return of writ on October 11, 2018. (ECF No. 7; PageID #: 48). McClellan timely filed a traverse on January 7, 2019. (ECF No. 10; PageID #: 811). This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on McClellan's petition and other case-dispositive motions. Because McClellan has presented only procedurally defaulted, meritless, or non-cognizable claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II.    Relevant Factual Background

The Ohio Court of Appeals for the Fifth Appellate District set forth the following facts[1] on direct appeal.

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

A.      **The Controlled Buy**

{¶ 3} Andrew Hayden ("Hayden") an FBI agent, testified he met Cleveland Thomas ("Thomas"), a career drug trafficker, in 2015 when he went to the Wayne County Jail after Thomas was apprehended on drug trafficking charges. Hayden stated Thomas was facing quite a few years in prison and Hayden learned Thomas wanted to provide the FBI with intelligence. Hayden determined Thomas would be a useful source, so he spoke to the local prosecutor, who recommended Thomas' release from jail to work as an FBI informant.

{¶ 4} On January 29, 2016, Thomas worked with the FBI as a confidential informant for a controlled purchase of cocaine. Hayden testified about the procedures used when making a controlled purchase with a confidential informant, including: providing the source with audio and video recording devices; providing [to] the source money for the transaction; providing surveillance; and meeting the source at a secondary location for debriefing. Hayden stated [that] a confidential informant cannot go anywhere else after they meet with agents before they go to the location to make the purchase or after they make the purchase before they debrief with the agents. The agents know where the source is going from the time they meet them until the time the transaction is over because the agents follow them and conduct surveillance. Prior to the purchase and after the purchase, an agent checks the informant and their vehicle for drugs and money.

{¶ 5} Hayden testified that on January 29, 2016, after Thomas contacted [McClellan] to set up a drug buy, Hayden met Thomas in a local parking lot to initiate the controlled buy. When Thomas first went to [McClellan's] house that day, [Thomas] was unable to complete the buy because the cocaine was not ready. Thomas returned the funds to Hayden that the FBI provided for the buy.

{¶ 6} Approximately two or three hours later, Hayden again met Thomas in a local parking lot to initiate a controlled buy. Hayden spoke to Thomas about the plan, placed the recording device on Thomas, gave him $1,450 to buy one ounce of cocaine, searched Thomas, searched Thomas' vehicle, and began surveillance of Thomas. Hayden stated [that] Thomas was under surveillance from the time he left the parking lot [until] … when he arrived at [McClellan's] home, an approximate ten-minute drive. Hayden testified [that] Thomas made no stops on his way to [McClellan's] house. Further, Thomas made no stops on his return from [McClellan's] house to the debriefing site.

{¶ 7} When Thomas arrived at the debriefing site, he gave Hayden one ounce of cocaine. Hayden testified [that] his partner searched Thomas and his vehicle. Hayden reviewed the video from Thomas' recording device and confirmed the conversation [that] Thomas relayed to him. Hayden saw [McClellan] on the video and identified [McClellan] as the individual he saw on the video giving cocaine to Thomas. Hayden informed Wayne County prosecutors that Thomas worked with the FBI and was successful in helping with a controlled purchase.

*State v. McClellan*, No. 2016CA00142, 2017 WL 2644856, *1-2 (Ct. App. Ohio June 19, 2017).

**B.    Trial Testimony**

{¶ 8} On cross-examination, Hayden stated he did not check under the dashboard of Thomas' car. Further, [Hayden stated] that while Thomas was facing eleven years in prison, his prison sentenced was reduced to three years. Hayden did not feel it was necessary to record the phone conversation between [McClellan] and Thomas to set up the buy because Hayden knew he would use video and audio if a controlled purchase occurred. The money given to Thomas was not photographed, but was digitally traced. The money was not recovered from [McClellan]. Hayden stated there was no video of Thomas walking into [McClellan's] home, but the agents were following Thomas and he was under surveillance.

{¶ 9} On re-direct, Hayden stated [McClellan] was not arrested on January 29, 2016[,] because the FBI wanted to see if they could find [McClellan's] supplier and thus Hayden did not expect to find the money when they arrested [McClellan] two weeks later. Hayden testified [that] he uses confidential sources a lot, and when a confidential source sets up a deal, it is usually outside the FBI's presence due to the confidential source's lifestyle and because it takes days to develop these relationships. Further, the FBI does not have the time or assets to do twenty-four-hour surveillance of all confidential informants. However, the FBI uses audio and video recording when the actual transaction occurs because that is where and when the criminal offense occurs.

{¶ 10} Timothy Alvord ("Alvord"), an FBI agent, testified he was with Hayden on January 29, 2016, he witnessed Hayden give the money to Thomas, took notes during the surveillance, and searched Thomas and his vehicle. Alvord did not search Thomas or his vehicle when he returned from [McClellan's] home the first time since no purchase was made. The second time Thomas went to

3

[McClellan's] house, before Thomas left, Alvord searched him and his vehicle, and found nothing.

{¶ 11} While other officers were conducting surveillance, Alvord would write down the notes called by these officers. Alvord testified Thomas went straight to [McClellan's] house from the meeting place and, after Thomas left [McClellan's] house, [Alvord] and Hayden followed Thomas to the debriefing spot. Alvord does not remember if he searched Thomas at the debriefing site, but testified [that] he did not search Thomas' vehicle. Alvord testified Thomas gave Hayden the cocaine.

{¶ 12} On cross-examination, Alvord stated he did not check under the dash when he searched Thomas' vehicle. Alvord testified he was pretty confident he did not search the vehicle when Thomas came back to the debriefing site. Alvord did not think Hayden searched the car again at that point either.

{¶ 13} On re-direct, Alvord stated he was right behind Thomas [on the way] to and from the buy and [that Thomas] made no movements like he was reaching under the dashboard.

{¶ 14} Thomas testified he was in prison for three years for selling cocaine and has been in trouble for selling drugs before. If he worked with the FBI, his sentence would be reduced from fifteen years to three years. Thus, he was working with the FBI to benefit himself and he did so in order to get a lesser sentence. Thomas previously bought drugs in Stark County, so he knew drug trafficking in the Stark County area.

{¶ 15} Thomas previously met [McClellan] through a friend and was once at [McClellan's] house. Because he previously went to [McClellan's] house with a friend, Thomas knew he could purchase drugs from [McClellan]. Thomas testified [that] when he made a phone call to [McClellan], [McClellan] told [Thomas that McClellan] would sell … drugs [to Thomas].

{¶ 16} Thomas met with agents before going to [McClellan's] house and they searched him and his car. When Thomas went to [McClellan's] house, [McClellan] let him in, he purchased one ounce of cocaine, and left. Thomas testified [that] he purchased the cocaine directly from [McClellan]. Thomas identified [McClellan] as the individual he purchased cocaine from the day of the controlled buy. Thomas identified Exhibit 1 as the video of the controlled buy in which [McClellan] handed him one ounce of cocaine and Thomas paid either $1,400 or $1,450. Thomas stated the video contained the

conversation he had with [McClellan], but he could not identify their faces on the video.

{¶ 17} After Thomas left [McClellan's] house, he met with the FBI agents; the agents took the cocaine. Thomas stated [that] the agents searched him after they took the cocaine from him. Thomas testified he did not stop his car on the way to [McClellan's] house and did not stop after he left [McClellan's] house before he met with the agents. Thomas stated [McClellan] was the man who sold him cocaine that day.

{¶ 18} On cross-examination, Thomas testified he was caught with a large amount of cocaine in 2015 and was facing a fifteen-year prison sentence, which he viewed as a life sentence since he was seventy-one years old. Thomas stated he was desperate to get a lesser sentence. Thomas testified that when he returned to the agents after the buy, they searched him, patted him down from head to toe, and searched his vehicle.

{¶ 19} Jay Spencer from the Stark County Crime Lab testified [that] Exhibit 2 contained 27.96 grams of a cocaine mixture.

{¶ 20} Michael Volpe ("Volpe"), a Canton police officer, was in charge of surveillance for the controlled buy on January 29, 2016. Volpe saw photos of Thomas and [McClellan], and established surveillance on the residence at 1505—4th Street. Volpe saw Thomas' vehicle pull up in front of [McClellan's] house, saw Thomas exit the vehicle, and saw Thomas go through the front door. After several minutes, Volpe saw Thomas exit[ed McClellan's] house and le[ft] in his vehicle.

*Id.* at *2-3.

## C.    Indictment and Guilty Verdict

McClellan was indicted on April 5, 2016, on one count of trafficking cocaine under Ohio Rev. Code § 2925.03(A)(1)(C)(4)(f), a felony of the first degree. *Id.* at *1. McClellan elected to proceed with a jury trial, which began on June 28, 2016. *Id.* The jury found McClellan guilty. *Id.* at *3. The trial court entered judgment, finding McClellan guilty and sentencing him to a nine-year prison term. *Id.*

5

### III.     Relevant State Procedural History

### A.     The Original Direct Appeal

McClellan filed a direct appeal in the Ohio Court of Appeals. He raised one assignment of error: "[McClellan's] convictions were against the manifest weight and sufficiency of the evidence." *Id.* The court reviewed McClellan's submission and concluded that he raised seven sub-arguments:

> [(1)] the agents forgot to search Thomas during the first part of the operation; [(2)] the agents failed to record or preserve the conversations between appellant and Thomas; [(3)] the agents never confirmed Thomas called appellant; [(4)] the agents did not photograph the money; [(5)] the agents did not recover the money from appellant; [(6)] the agents did not search Thomas or his vehicle after the second debriefing; and [(7)] the agents did not search under the dashboard in Thomas' vehicle.

*Id.* at *4. The court noted that "there was conflicting evidence or evidence to explain" McClellan's conviction. *Id.* McClellan also attacked Thomas's credibility, but the court reasoned that the jury had heard about Thomas's motivation and accorded credibility to his testimony, ultimately concluding that McClellan's "is not an exceptional case in which the evidence weighs heavily against the conviction. The jury neither lost its way nor created a miscarriage of justice in convicting appellant of the charge." *Id.* at *5 (citations omitted). The court also concluded, "[v]iewing the evidence in the case at bar in a light most favorable to the prosecution, … that a reasonable person could have found beyond a reasonable doubt that [McClellan] knowingly sold cocaine in an amount equal or exceeding twenty-seven grams." *Id.* Concerning the manifest weight of the evidence concerning the exact weight of the cocaine at issue, the court concluded that Ohio case law supported the conviction. *Id.* at *6. Ultimately, the court affirmed the trial court's judgment and sentence. *Id.*

6

Although he was represented by counsel during trial and his direct appeal, when McClellan petitioned the Supreme Court of Ohio to take jurisdiction over his case on July 13, 2017, he did so *pro se*. (ECF No. 7-1, PageID #: 164-94). He raised the same single issue as on direct appeal. The Supreme Court of Ohio denied jurisdiction on October 11, 2017. (ECF No. 7-1, PageID #: 196).

### B.    Application to Reopen the Appeal

In September 2017, McClellan, again appearing *pro se*, moved the court to reopen his appeal under Ohio App. R. 26(B). (ECF No. 7-1, PageID #: 197-240). As that rule requires, McClellan sought to reopen his appeal because he believed that his appellate counsel was ineffective by not raising a number of ineffective-assistance-of-trial-counsel arguments. (ECF No. 7-1, PageID #: 197). He raised the following assignments of error:

1.    Trial court error when it allowed prosecutor to use peremptory challenges in a racially discriminatory manner.

2.    Trial court erred for not excusing juror for cause. Ineffective assistance of counsel for not using peremptory challenge to excuse.

3.    Judge and prosecutor misconduct deprived defendant of a fair trial and due process.

4.    Ineffective assistance of trial counsel.

5.    Mr. McClellan would have sold it to him; he would have sold it to Joe on the street he would have sold it to anybody in the room (Tr. 323). The way the prosecutor said it so loud shook and shocked the whole courtroom. Then on top of that she says, Whit incentive does Mr. Thomas have to lie to you know. He has no incentive left to lie he told the truth (Tr. 324). [*sic.*].

(ECF No. 7-1, PageID #: 197-206). He provided for the court an affidavit and the trial transcripts. (ECF No. 7-1, PageID #: 207-40).

The Ohio Court of Appeals denied McClellan's application to reopen his appeal. (ECF No. 7-1, PageID #: 251-58). Because McClellan raised his ineffective-assistance-of-appellate-counsel

claims via the correct procedural mechanism, the court considered the merits of McClellan's arguments. (ECF No. 7-1, PageID #: 251-58). McClellan then petitioned the Supreme Court of Ohio *pro se* to take jurisdiction over his new assignments of error. (ECF No. 7-1, PageID #: 259-86). On December 20, 2017, the court again denied jurisdiction. (ECF No. 7-1, PageID #: 298).

### C.      Petition for Post-Conviction Relief

In August 2017, McClellan, again *pro se*, moved the trial court for post-conviction relief. *State of Ohio v. McClellan*, No. 2017CA00188, 2018 WL 656414, *1 (Ct. App. Ohio Jan. 31, 2018). The trial court denied his petition on August 28, 2017, and again on September 20, 2017. *Id.* He then moved the Ohio Court of Appeals to consider his petition. (ECF No. 7-1, PageID #: 299-316). McClellan generally alleged that:

1.    his sixth and fourteenth amendment rights were violated, as was Article 1.10 of Ohio's Constitution, when the trial court did not remove Juror 37 for cause, and his attorney didn't use a peremptory strike to excuse her;

2.    his sixth and fourteenth amendment rights were violated when his trial counsel failed to object or ask for a race-neutral reason for the prosecution's decision to peremptorily strike Juror 28, an African American female;

3.    his trial counsel was ineffective because he failed to examine the prosecutor's files or present video evidence to the jury; and

4.    his sixth and fourteenth amendment rights were violated, as was Article 1.10 of Ohio's Constitution, when trial counsel ineffectively investigated his defense, including failing to interview potential witness Sara B[u]rghy.

(ECF No. 7-1, PageID #: 299-316). On January 31, 2018, the court concluded that McClellan's first and second grounds, which concerned jury selection, were barred by *res judicata*. *Id.* at *2. It also concluded that McClellan did not receive ineffective assistance of counsel; thus, it denied his third and fourth assignments of error. *Id.* at *3.

McClellan then petitioned the Supreme Court of Ohio to take jurisdiction over his appeal. (ECF No. 7-1, PageID #: 394-430). The State of Ohio waived submitting a memorandum in

response. (ECF No. 7-1, PageID #: 431). On March 23, 2018, the Supreme Court of Ohio struck

pages 16-23 of McClellan's memorandum for exceeding the page limit and declined to accept

jurisdiction. (ECF No. 7-1, PageID #: 432-33).

## IV.  Federal Habeas Corpus Petition

On May 1, 2018, McClellan petitioned this Court *pro se* to issue a writ of habeas corpus

compelling his release. (ECF No. 1). McClellan asserted nine grounds for relief:

> **GROUND ONE:** Failed to object or excuse Juror No. 37 who was prejudice against drugs.
>
> **Supporting Facts:** Juror No. 37 said her brother-in-law 3 or 3 years ago overdosed on cocaine. Hooked up with the wrong crowd. Her niece is on heroin going through rehab 6 to 7 years. She was asked if she could be fair and impartial dealing with drugs. She said she was anti-drugs don't hang around people who do drugs so I'm definitely against drugs.
>
> *
>
> **GROUND TWO:** Failed to object to and ask for a race neutral reason for excusing Afro-American female from the jury.
>
> **Supporting Facts:** The Prosecutor used her peremptory challenges to excuse the only two Afro-Americans in the jury. The Prosecutor used her first peremptory challenge to excuse a Afro-American female then she used second challenge to excuse a Afro-American male. The Prosecutor gave a race neutral excuse for the male but not for the female.
>
> *
>
> **GROUND THREE:** Ineffective assistance [of trial counsel, who] failed to properly examin[e] the Prosecutor's file and failing to present evidence to the Jury.
>
> **Supporting Facts:** The prosecutor had about 4 CD's of the agent's investigation and my trial attorney showed me two of them but didn't let me know about the rest. The prosecutor showed about two minutes of the videos during trial. And my attorney could have showed the videos to contradict what the prosecutor said during the trial but he didn't. He led me and the jury to think he was going to show [them,] but he didn't. I kept asking him to [do so,] but he wouldn't.

\*

**GROUND FOUR:** Ineffective assistance of counsel. He did not investigate to determine a possible defense. He did not talk to my witnesses.

**Supporting Facts:** My witness Sara Burgy was on one of the videotape[s] of their investigation and [my] trial attorney never spoke to her. At the last minute before trial he had me call her to the courthouse[,] le[adding] me and the judge believe she was going to testify[,] but she didn't.

\*

**GROUND FIVE:** Trial court err[ed] when it allowed Prosecutor to use peremptory challenges in a racially discriminatory manner[.]

**Supporting facts:** The prosecutor used her first two peremptory challenges to excuse the only two Afro Americans in the jury.

\*

**GROUND SIX:** Trial court erred [by] not excusing Juror No. 37 for cause. Ineffective assistance of counsel for not using peremptory challenge to excuse [her].

**Supporting Facts:** Juror No. 37 said her brother in law 3 or 4 years ago overdosed on cocaine. Hooked up with the wrong crowd. Her niece is on heroin going through rehab 6 to 7 years. She was asked if she could be fair and impartial dealing with drugs[, but] she said she was anti-drugs[, that she] do[es]n't hang around people who do drugs[, she is]… definitely against drugs.

\*

**GROUND SEVEN:** Judge and Prosecutor misconduct[, which deprived] defendant of a fair trial.

**Supporting Facts:** Judge let the prosecutor … let detective Michael Volpe … tell the jury about looking me up on C.J.I.S.[,] a Stark County online record program that people use to access … criminal records.

\*

10

**GROUND EIGHT:** Ineffective assistance of trial counsel.

**Supporting Facts:** The informer couldn't say that the bag of cocaine is the bag that he got from me. It was ma[r]ked all wrong. My Attorney could have argued [against its admission under] … Rule 29[,] but he waited for the judge to tell him to raise the Rule 29 motion and didn't put up any arguments.

*

**GROUND NINE:** Convictions were against the manifest weight and sufficiency of the evidence [a]nd *State v. Gonzales* 2016-0hio-8313.

**Supporting Facts:** Agent Hayden[,] the Main F.B.I. [agent,] explained how he provides money for the controlled buy and how he keeps an eye on the informant and … how the informant is checked before and after the buy[ s]o that the informer doesn't bring his own drugs and money. But there were many holes in the procedure that compromised the running of the informant. At times they forgot to search the informant[, and they] … didn't search him when he returned[,] plus they never marked the money.

(ECF No. 1 at 5-18).

## V.    Legal Standards

### A.    Jurisdiction

28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Stark County sentenced McClellan, and Stark County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over McClellan's § 2254 petition.

11

## B.        Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law … are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th 1998).

## C.        AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision

only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

14

## VI.    Discussion

### A.    Ground One

In Ground One, McClellan states that his trial counsel "[f]ailed [*sic*] to object or excuse Juror No. 37[,] who was prejudice against drugs," from the venire. (ECF No. 1, PageID #: 5). McClellan supports his argument by summarizing facts from the trial transcript on *voir dire* that he believes should have compelled Juror 37 to be struck from the jury. (ECF No. 1, PageID #: 5).

Respondent argues that Ground One is improperly pled because it does not "specify all grounds for relief available to" McClellan under the federal constitution. (ECF No. 7, PageID #: 68-69 (citing Rs. GOVERNING CASES UNDER 28 U.S.C. § 2254 IN THE U. S. DIST. CTS., R. 2(c)). Alternatively, Respondent argues that Ground One is procedurally defaulted because McClellan did not raise the issue on direct appeal. (ECF No. 7, PageID #: 69-72). Respondent notes that the Ohio Court of Appeals concluded that this ground, which was first raised in McClellan's petition for post-conviction relief, was barred by *res judicata* because McClellan did not raise it in his direct appeal. (ECF No. 7, PageID #: 69-70). Moreover, Respondent argues that McClellan cannot demonstrate that his failure to raise this issue on direct appeal should be excused under the cause-and-prejudice doctrine. (ECF No. 7, PageID #: 71-72). Respondent so argues because McClellan has not supported Ground One with new, reliable evidence that was not presented at trial. (ECF No. 7, PageID #: 72).

The Court disagrees with Respondent that Ground One is improperly pled. It is well settled that a *pro se* habeas petitioner's pleadings "are held to a less stringent standard than those prepared by an attorney." *Urbina v. Thomas*, 270 F.3d 292, 295 (6th Cir. 2001). Although imperfectly stated, Ground One can be liberally construed to allege an ineffective-assistance-of-trial-counsel claim. McClellan confirms this in his traverse: "I was arguing ineffective assistance of trial counsel for

15

not bringing … up [the purported strike-for-cause grounds] during trial." (ECF No. 10, PageID #: 819). Ineffective-assistance-of-counsel claims are cognizable. *See generally*, *Williams*, 529 U.S. 362 (2000). Thus, Ground One is sufficiently pled.

The Court agrees with Respondent, however, that Ground One is procedurally defaulted because McClellan failed to follow Ohio's procedural rule for appealing ineffective-assistance-of-trial-counsel claims, which must be raised on direct appeal. A claim is procedurally defaulted if "there is a state procedural rule that the petitioner failed to follow, that the state courts actually enforced, and that constitutes an adequate and independent state ground to foreclose review of the federal constitutional claim." *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986)). "A petitioner also may procedurally default a claim by failing to raise the claim in state court and pursue it through the state's 'ordinary appellate review procedures,' if, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim." *Hale v. Shoop*, No. 1:18-CV-504, 2021 WL 1215793, at *16 (N.D. Ohio Mar. 31, 2021) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999)).

If a petitioner's argument is procedurally defaulted, then "the petitioner may excuse the default if he can show cause for failure to follow the rule and prejudice resulting therefrom." *Durr*, 487 F.3d at 432 (citing *Poindexter v. Mitchell*, 454 F.3d 564, 583 (6th Cir.2006)). Generally,

> [a] showing of cause requires more than the mere proffer of an excuse. Rather, the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule…

*Lundgren v. Mitchell*, 440 F.3d 754, 763-64 (6th Cir. 2007) (cleaned up). And "[h]abeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced."

16

*Id.* (quotation omitted). For assistance-of-counsel arguments, "the cause requirement may be satisfied … [if] a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests." *Reed v. Ross*, 468 U.S. 1, 14 (1984). An example is if the constitutional issue is "reasonably unknown" to counsel. *Id.* Concerning prejudice, it "must be a result of the alleged constitutional violation and not a result of the trial counsel's failure to meet state procedural guidelines." *Maupin*, 785 F.2d at 139. Thus, courts do not consider "whether any prejudice resulted from the actual procedural default." *Id.* The petitioner bears the burden of demonstrating prejudice. *Id.*

The Sixth Circuit has held that the "Ohio courts' rule denying review of the merits in post-conviction proceedings when a petitioner could have, but failed, to raise a claim on direct appeal [*i.e.*, *res judicata*], … constitute[s an] 'adequate and independent' state grounds foreclosing review in subsequent federal habeas proceedings." *Lundgren*, 440 F.3d at 765 (citing *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000)). Ohio Courts of Appeals enforce *res judicata* in these circumstances. *See e.g.*, *State v. Twyford*, 106 Ohio St.3d 176 (2005); *State v. Williams*, 99 Ohio St.3d 179 (2003). The Ohio Court of Appeals applied *res judicata* in denying McClellan's petition for post-conviction relief, noting that the basis of McClellan's argument "was available to [him] at the time of his direct appeal." *McClellan*, 2017 WL 2644856, at *2. Thus, Ground One is procedurally defaulted, and McClellan must demonstrate that cause excuses his default and that he was prejudiced by the alleged constitutional violation.

For his part, McClellan largely rehashes Juror 37's statements during *voir dire*, facts that were available to him on direct appeal. (ECF No. 10, PageID #: 819-20). Those facts do not demonstrate cause that would excuse his failure to raise the argument on direct appeal because those facts were in the record at that time. McClellan also includes excerpts from cases before the

17

Supreme Court and the various circuits. (ECF No. 10, PageID #: 821-23). these cases discuss juror bias; such case law is, at best, only inferentially linked to the ineffective-assistance-of-trial-counsel argument that McClellan asserts in this ground, and it does not help to demonstrate cause, either.

But in his traverse, McClellan states that he "mentioned something" in his motion to reopen his appeal about how his "appeal attorney was ineffective for not bringing up" the issue that he now raises as Ground One. (ECF No. 10, PageID #: 820). Construing that statement liberally, the Court finds that McClellan argues here that his appellate counsel was constitutionally ineffective, which could excuse his failure to raise this ground in his direct appeal. Nevertheless, McClellan has not alleged a persuasive ineffective-assistance-of-appellate-counsel argument, and it is his burden to do so. "Ineffective assistance of appellate counsel claims are governed by the same … standard as ineffective assistance of trial counsel" claims. *Gerth v. Warden, Allen Oakwood Correctional Inst.*, 938 F.3d 821, 831 (6th Cir. 2019) (citing *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009)). That is, "the petitioner must show that his appellate counsel made an objectively unreasonable decision by not raising the trial court error and that he suffered prejudice because of that decision." *Id.* In making that argument, a petitioner must do more "than simply identify trial court errors as he would on direct appeal." *Id.*

Rather than explain how his appellate counsel was constitutionally ineffective, McClellan merely identifies an instance in which he believes that his trial counsel erred.[2] This does not satisfy his burden. *Gerth*, 938 F.3d at 831. Because McClellan's ineffective-assistance-of-appellate-counsel claim is unpersuasive, McClellan has not demonstrated that there is cause to excuse procedurally defaulting this argument. Nor has McClellan attempted to demonstrate that he was

---

[2] As discussed in more detail in Ground Six, that particular argument is unpersuasive.

actually prejudiced by the alleged constitutional violation under *Maupin*. Thus, Ground One must be dismissed.

### B.    Ground Two

In Ground Two, McClellan asserts that his trial counsel also "failed to object to and ask for a race-neutral reason for excusing" Juror 28. (ECF No. 1, PageID #: 7). He supports this assertion by attempting to draw a parallel between Juror 28 and Juror 30, whom McClellan characterizes as "the only two Afro-Americans in the [venire]." (ECF No. 1, PageID #: 7). As McClellan notes, the State used peremptory challenges to excuse both jurors. (ECF No. 7-2, PageID #: 555-57). But McClellan's trial counsel challenged the State's peremptory strike under *Batson v. Kentucky*, 476 U.S. 79 (1986), for only Juror 30. (ECF No. 7-2, PageID #: 555-57). During the challenge, the State offered a race-neutral reason for striking Juror 30 that satisfied the *Batson* standard. (ECF No. 7-2, PageID #: 555-57).

In response, Respondent asserts that Ground Two is procedurally defaulted because McClellan did not raise the issue on direct appeal, even though he could have. (ECF No. 7, PageID #:73-74). Instead, he raised it for the first time in his petition for post-conviction relief. (ECF No. 7, PageID #: 73). Respondent notes that the *voir dire* transcript, which forms the factual basis for Ground Two, was in the record on direct appeal and that McClellan had different counsel on appeal. (ECF No. 7, PageID #: 73). Thus, the Ohio Court of Appeals correctly concluded that the argument was barred by *res judicata*. (ECF No. 7, PageID #: 73). Respondent also argues that McClellan cannot show that cause excuses his failure to raise the argument; nor can he demonstrate that the alleged constitutional violation prejudiced him. (ECF No. 7, PageID #: 73-74).

In his traverse, McClellan reiterates that his "trial attorney was ineffective" for not challenging the State's peremptory challenge of Juror 28. (ECF No. 10, PageID #: 826). McClellan

19

concedes that he raised this issue first in his petition for post-conviction relief. (ECF No. 10, PageID #: 826). He notes that when he filed that petition, he "didn't know who the Afro American female [*i.e.*, Juror 28] was from the transcripts. That's why in [McClellan's] motion for appointment of counsel … [he] mentioned that [he] needed help to determine who [she was] and why [she] … was excused from the jury." (ECF No. 10, PageID #: 826). McClellan also includes in his traverse paragraphs 34-42 from *State v. Hampton*, 2016-Ohio-5321 (Ct. App. Ohio Aug. 11, 2016).[3] (ECF No. 10, PageID #: 827-29).

The Court agrees with Respondent that Ground Two is procedurally defaulted. As with Ground One, McClellan admits that he did not raise this ground in his direct appeal. He was represented by appellate counsel and the facts that form the basis of his objection—the *voir dire* transcript—were part of the record during McClellan's direct appeal. Because of this, the Ohio Court of Appeals applied *res judicata* to this ground, too. *McClellan*, 2018 WL 656414, at *2. *Res judicata* is an adequate and independent state ground for foreclosing review. *Lundgren*, 440 F.3d at 765.

The Court also agrees with Respondent that McClellan has not demonstrated cause that would excuse his failure to raise this argument in his direct appeal, nor has he demonstrated prejudice resulting from the purported constitutional violation. Rather than demonstrate an objective factor external to his defense impeded his counsel's efforts to bring up this issue on direct appeal, McClellan relies exclusively on the trial transcript for his inference that Juror 28 was Black and was struck for a racially discriminatory reason. That information was within the record during

---

[3] The *Hampton* excerpt detailed the *Batson* decision and its progeny, and how that framework was applied in a case in which the court and defendant both objected to the peremptory challenge of an African American female in the venire. *Hampton*, 2016-Ohio-5321 at *7-9. McClellan did not explain its significance to his petition.

McClellan's direct appeal. Thus, McClellan's argument that he needed help to determine who Juror 28 was and why she was struck is unpersuasive. McClellan was represented by appellate counsel, and that counsel is presumed competent until McClellan shows otherwise. *Strickland v. Washington*, 466 U.S. 668, 691 (1984). In any case, unlike in Ground One, McClellan does not argue here that his appellate counsel was deficient. Thus, McClellan has not satisfied his burden. Accordingly, McClellan has not shown cause to excuse his procedural default.

Separately, McClellan has not demonstrated that the purported constitutional violation prejudiced him. During her colloquy with the trial judge, Juror 28 expressed three reasons for not wanting to participate in the jury: (1) lost income; (2) difficulty in finding child care; and (3) a general disruption to her life. (ECF No. 7-2, PageID #: 464-65). Although the State was not asked to offer a race-neutral reason for peremptorily striking Juror 28, this excerpt demonstrates that there could be at least three race-neutral reasons for peremptorily striking Juror 28.[4] McClellan has not demonstrated that he was denied an impartial jury when the State peremptorily struck Juror 28. Thus, he has not shown that any constitutional violation occurred, let alone that he suffered prejudice from it. *Maupin*, 785 F.2d at 139.

---

[4] Additionally, McClellan's implied argument that his trial counsel was obligated to raise a *Batson* challenge to the removal of a Black juror from a Black defendant's venire—merely because that juror is Black—is legally baseless, as the Sixth Amendment requires only an *impartial* jury, not a *representative* jury. *Holland v. Illinois*, 493 U.S. 474, 480 (1990). Indeed, under *Batson*, a defendant must show more than just that "he is a member of a cognizable racial group … and that the [peremptorily struck] … venire member [is] of the defendant's race." *Batson*, 476 at 96. He must also show that there are "facts and any other relevant circumstances [that] raise an inference that the prosecutor used [a peremptory challenge] … to exclude the veniremen from the petit jury on account of their race." *Id.* Only after that would the state have to offer "a neutral explanation for challenging black jurors." *Id.* at 97.

Ground Two is procedurally defaulted. Because McClellan has not demonstrated cause that would excuse this default or that he suffered any prejudice from the purported constitutional violation, Ground Two must be dismissed.

### C.    Ground Three

In Ground Three, McClellan argues that his trial counsel was ineffective because counsel failed to examine the State's evidence or sufficiently present it to the jury. (ECF No. 1, PageID #: 8-10). McClellan states that his trial counsel did not share with him two of the four discs containing video or audio evidence. (ECF No. 1, PageID #: 8). He alleges that there was additional video footage available that would have contradicted the State's case. (ECF No. 1, PageID #: 8). And he argues that his trial counsel led him to believe that counsel would enter the additional portion of the video into evidence, but did not, despite McClellan's requests that he do so. (ECF No. 1, PageID #: 8).

Respondent argues that Ground Three is meritless. (ECF No. 7, PageID #: 79). Respondent largely rests on the Ohio Court of Appeals' analysis. (ECF No. 7, PageID #: 79). That court concluded that the claim was meritless because McClellan never raised evidence *dehors* the record that would support his ineffective-assistance-of-counsel argument. (ECF No. 7-1, PageID #: 392-93).

As a preliminary point, although McClellan first raised this ground in his petition for post-conviction relief, the Ohio Court of Appeals did not treat it as barred under *res judicata*, as it had Ground One and Ground Two. And Respondent has not argued that this ground is procedurally defaulted. Thus, this Court will consider Ground Three's merits.

To establish ineffective assistance of trial counsel under the Sixth Amendment, a petitioner must show that his counsel performed deficiently and that he suffered prejudice as a result.

*Strickland*, 466 U.S. at 691. In such challenges, "the petitioner must demonstrate that counsel's errors were so egregious that 'counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" *Hale*, 2021 WL 1215793, at \*78 (quoting *Strickland*, 466 U.S. at 687). "To determine if counsel's performance was 'deficient' …, a reviewing court must find that the representation fell below an objective standard of reasonableness." *Id.* (quoting *Strickland*, 466 U.S. at 688). And to demonstrate prejudice, a petitioner must show that there is "a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome.'" *Id*. (quoting *Strickland*, 466 U.S. at 694).

Concerning a reasonable investigation, the Supreme Court has stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments," which itself carries "a strong presumption … of reasonable professional assistance." *Id.* at 689, 691. "[S]trategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallengeable." *Id.* at 690. If trail counsel employed what "might be considered sound trial strategy," then the court will accord it deference and not find that the assistance was ineffective. *Id.* at 689.

The Court concludes that Ground Three is meritless because McClellan has not demonstrated that his trial counsel was deficient. McClellan has only cursorily argued that the additional videotape footage would contradict the State's case-in-chief. (ECF No. 1, PageID #: 8). To support his argument, he describes a portion of unseen video evidence:

> My attorney showed me on a visit to his office the one video, which
> showed the F.B.I. at the beginning of the video sitting in front of a
> truck and they hand Thomas a wire and show him how to use it. And
> Thomas gets out [of] the truck. And the F.B.I. agent calls Thomas
> and tells him to pull off the road. And the agent Alvord gets out and
> search[es] Thomas['s] pocket and lets him get back into his vehicle
> with[]out searching it.

(ECF No. 10, PageID #: 842-43). McClellan's summary of the additional video footage is very

similar to Hayden's and Thomas's direct and cross-examination testimony. (ECF No. 7-2, PageID

#: 583-639, 662-88). Notwithstanding the similarities between that testimony and the video's

purported contents, McClellan states that his trial counsel "refer[red] to it a lot during trial," which

caused McClellan to assume that his trial counsel would play the entirety of the video to the jury.

(ECF No. 10, PageID #: 843). McClellan then discusses a second excerpt that purportedly shows

> Thomas turning on the video him[]self pulling up in front of
> [McClellan's] … house[, and he] comes in to [McClellan's] house…
> [then] is shows … Thomas leav[ing McClellan's] house … [and]
> moving all around in his vehicle with the video going in and out[,
> which] … continued for at least 20 minutes.

(ECF No. 10, PageID #: 843). McClellan concedes again that his trial attorney elicited testimony

concerning about what the video purportedly shows while he cross-examined the State's witnesses.

(ECF No. 10, PageID #: 840-43).

The Court concludes that McClellan has not raised any facts that would demonstrate that

his trial counsel was deficient in failing to investigate the evidence available to him. The record

confirms that testimony concerning the events that the additional video footage would purportedly

show was before the jury. (ECF No. 7-2, PageID #: 583-639, 662-88). Based on the record, it

appears that McClellan's counsel decided to reserve the video evidence of these events and,

instead, rely on the elicited testimony. Rather than show professional misconduct, this action

demonstrates that McClellan's trial counsel sufficiently investigated the evidence and used his

professional judgment to reserve it. That tactical decision is presumptively valid, and McClellan has not demonstrated that that presumption should not apply here. *Reed*, 468 U.S. at 13. Thus, McClellan has not shown that his trial counsel was deficient. Further, McClellan fails to demonstrate any prejudice, as he has not shown that playing the video evidence in court would have changed the outcome of his trial. It is his burden to do so. *Maupin*, 785 F.2d at 139.

In sum, McClellan has not shown that his trial counsel was constitutionally ineffective, as he has not met his burden of overcoming the "strong presumption … of reasonable professional assistance" that the Court must afford to his trial counsel. *Strickland*, 466 U.S. 691. Accordingly, Ground Three is meritless and must be dismissed.

### D.    Ground Four

In Ground Four, McClellan argues that his trial counsel was again ineffective because he failed to talk to one Sara Burghy, whom McClellan asserts is a useful witness. (ECF No. 1, PageID #: 10). McClellan states that Burghy appeared in one of the video tapes of the investigation. (ECF No. 1, PageID #: 10). He states that his trial counsel never spoke to her. (ECF No. 1, PageID #: 10). And he states that his trial counsel asked McClellan to call Burghy "at the last minute before trial … to the court house[, which] led me and the judge [to] believe [that] she was going to testify[,] but she didn't." (ECF No. 1, PageID #: 10). McClellan did not discuss Ground Four in his traverse.

Respondent argues that Ground Four is meritless in the same way that Ground Three was. Respondent notes that the Ohio Court of Appeals did not find meritorious McClellan's argument about Burghy, nor has McClellan explained to the Court what Burghy would have testified to or how her testimony would have affected McClellan's conviction or appeal. (ECF No. 7, PageID #: 79). Respondent then argues that McClellan has thus not shown that his trial counsel was deficient

25

or that he suffered prejudiced. (ECF No. 7, PageID #: 79). Finally, Respondent asserts that the Ohio Court of Appeals' analysis was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. (ECF No. 7, PageID #: 79).

The Court concludes that Ground Four is meritless. McClellan did not demonstrate that his trial counsel was ineffective in his petition, nor did he elaborate on this ground in his traverse. It is his burden to do so. *Strickland*, 466 U.S. at 687. Because McClellan never explains what Burghy's testimony might entail, the Court cannot conclude that McClellan's trial counsel's actions were deficient, or that they prejudiced McClellan. To do so without such facts would be to ignore the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" without any factual support whatever. *Id.* Additionally, the Court agrees with Respondent that the Ohio Court of Appeals properly analyzed McClellan's argument under settled Supreme Court precedent; thus, it did not unreasonably apply clearly established federal precedent. *Lockyer*, 538 U.S. at 75. Accordingly, Ground Four is meritless and must be dismissed.

### E.    Ground Five

Ground Five asserts the same general argument as Ground Two, except that McClellan places the onus of raising a *Batson* challenge to Juror 28's removal on the trial judge. (ECF No. 1, PageID #: 12). But McClellan first in his motion to reopen his appeal, rather than in his petition for post-conviction relief. (ECF No. 1, PageID #: 12; ECF No. 7-1, PageID #: 199). Based on the context in his motion to reopen his appeal, the Court liberally construes Ground Five to be an allegation that McClellan's appellate counsel failed to raise this argument on direct appeal, *i.e.*, that McClellan received ineffective assistance of appellate counsel.

Respondent discusses Ground Five in the same section as Ground Two. (ECF No. 7, PageID #: 72-77). But aside from summarizing Ground Five and arguing that it, too, is

procedurally defaulted, Respondent does not analyze the circumstances under which Ground Five arose. The two grounds are procedurally quite different: Whereas Ground Five arose from McClellan's motion to reopen his appeal (in which McClellan argued ineffective assistance of appellate counsel), Ground Two arose from McClellan's petition for post-conviction relief (in which he argued ineffective assistance of trial counsel after his direct appeal).

For that reason, the Court concludes that McClellan's claim is not procedurally defaulted. "In Ohio, defendants claiming ineffective assistance of appellate counsel must apply to the Ohio Court of Appeals [under Ohio App. R. 26(B)] for reopening of the direct appeal." *Landrum v. Mitchell*, 625 F.3d 905, 916 (6th Cir. 2010); Ohio App. R. 26(B) ("A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel."). McClellan followed that rule. (ECF No. 7-1, PageID #: 197, 199-200). The Ohio Court of Appeals considered the merits of McClellan's argument under Ohio App. R. 26(B), ultimately concluding that the argument was meritless.[5] (ECF No. 7-1, PageID #: 252-55). McClellan petitioned the Supreme Court of Ohio on these grounds, too, but the court declined jurisdiction. (ECF No. 7-1, PageID #: 259-86, 298). And here, he again raises the argument that his appellate counsel was constitutionally ineffective. (ECF No. 1, PageID #: 12).

The Court concludes, however, that Ground Five is meritless because McClellan has not demonstrated that his appellate counsel was ineffective. As discussed in Ground One,

---

[5] The Court notes that the appeals court focused entirely on the State's peremptory strike of Juror 30. (*See generally*, ECF No. 7-1, PageID #: 252-55). As he briefed the court, McClellan's core argument concerned Juror 28. (ECF No. 7-1, PageID #: 199-200). Thus, McClellan "fairly presented" his constitutional argument in state court. *See Ream v. Bunting*, No. 3:15-CV-0313, 2017 WL 7805229, at *11 (N.D. Ohio April 12, 2017) (noting that "Federal habeas courts review a petitioner's state-court briefs to determine whether he or she fairly presented a claim as a federal constitutional claim.").

"[i]neffective assistance of appellate counsel claims are governed by the same … standard as ineffective assistance of trial counsel." *Gerth*, 938 F.3d at 831 (citing *Webb*, 586 F.3d 383, 399 (6th Cir. 2009)). That is, "the petitioner must show that his appellate counsel made an objectively unreasonable decision by not raising the trial court error and that he suffered prejudice because of that decision." *Id.* In making that argument, a petitioner must do more "than simply identify trial court errors as he would on direct appeal." *Id.* The petitioner must show that "the [appellate] representation fell below an objective standard of reasonableness." *Hale*, 2021 WL 1215793, at *78 (quotations omitted). In considering the inquiry, the court must "reconstruct the circumstances of counsel's challenged conduct and evaluate the conduct from counsel's perspective at the time." *Id.* (quotations omitted). Appellate counsel's tactical decision is constitutionally ineffective only "if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008).

In his traverse, McClellan focuses his ineffective-assistance-of-appellate-counsel argument on what happened during *voir dire*, arguing without support that the trial judge was obligated to *sua sponte* raise a *Batson* challenge when the State peremptorily struck Juror 28. (ECF No. 10, PageID #: 830-31). But there is no such obligation. While the Supreme Court of Ohio has accepted as valid a trial court's *sua sponte Batson* challenge in *State v. Gowdy* (88 Ohio St. 3d 387, 392 (2000)), the Supreme Court of Ohio has never declared that a trial judge is *obligated* to raise such a challenge. The federal courts agree: "[A] trial judge is not obligated to raise a Batson challenge *sua sponte*." *See generally Hayden v. Warden, Me. State Prison*, No. 1:18-cv-0432, 2020 WL 4677289, at *5 (D. Maine Aug. 12, 2020) (citing various decisions that state the same from the First, Fourth, Ninth, and Tenth Circuits). And in a related doctrine on gender-based discrimination in the jury-selection process, the Supreme Court of Ohio has declared that a "trial court ha[s] no

28

obligation to raise a *J.E.B.* challenge on its own motion." *State v. Maxwell*, 139 Ohio St. 3d 12, 32 (2014).

In that light, McClellan cannot demonstrate that his appellate counsel was constitutionally ineffective because he cannot demonstrate that it was objectively unreasonable for his appellate counsel to not raise this issue. *Gerth*, 938 F.3d 831. Similarly, it is not reasonably probable that including this assignment of error in McClellan's appeal would have changed the result of McClellan's direct appeal. *Wilson*, 515 F.3d at 707. Accordingly, the Court concludes that Ground Five is meritless, and it must be dismissed.

### F.      Ground Six

In Ground Six, McClellan revisits his concerns over Juror 37, this time arguing two separate claims: (1) the trial court should have struck Juror 37 for cause; and 2) his trial counsel should have peremptorily struck Juror 37 from the venire. (ECF No. 1, PageID #: 13). McClellan argued in his motion to reopen his appeal that there was cause to strike Juror 37, recounting Juror 37's *voir dire* colloquy:

> Juror No. 37 said [that] her brother-in-law 3 or 4 years ago over[]dosed on cocaine [and got] hooked up with the wrong crowd. [She said that h]er neice is on heroin[e and] going through rehab 6 to 7 years (tr74)[.] She was asked if she could be fair and impartial [when] dealing with drugs [charges, and] she said that she was anti-drugs[, that she had] been all her life[, that she] never did drugs[, that she doesn't] hang around people who do drugs[,] so [she is] definitely against drugs (tr75).

(ECF No. 7-1, PageID #: 201). As with Ground Five, Ground Six arises from McClellan's motion to reopen his appeal. (ECF No. 7-1, PageID #: 201). Thus, the Court liberally construes McClellan's argument to be that his appellate counsel was constitutionally ineffective by failing to raise both of these issues in McClellan's direct appeal.

29

Respondent discusses Ground Six together with its discussion of Ground One. (ECF No. 7, PageID #: 68-72). Respondent first argues that Ground Six is improperly pled. (ECF No. 7, PageID #: 68-69). Respondent alternatively argues that Ground Six is procedurally defaulted because it was not raised on direct appeal. (ECF No. 7, PageID #: 69-72). Respondent ultimately argues that Ground Six is not excused by cause and that McClellan did not suffer prejudice. (ECF No. 7, PageID #:71-72).

As an initial point, Ground Six is sufficiently pled and, thus, can be decided on its merits. The Court can decipher from McClellan's motion to reopen his appeal, his petition, and his traverse that this ground concerns ineffective assistance of appellate counsel. As Respondent notes, "[a] criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial," provided that "counsel … acts as an advocate rather than merely as a friend of the court." (ECF No. 7, PageID #: 66 (citing *Evitts v. Lucey*, 469 U.S. 387 (1985))). That occurred here. And Ground Six is not procedurally defaulted because, as with Ground Five, McClellan raised Ground Six in his motion to reopen his appeal under Ohio App. R. 26(B). The Ohio Court of Appeals reviewed the claim on the merits, rather than barring review under *res judicata*, and it found that McClellan's appellate counsel was not deficient. (ECF No. 7-1, PageID #: 256). McClellan presented the issue to the Supreme Court of Ohio, who did not take jurisdiction. (ECF No. 7-1, PageID #: 259-86, 298). And here, he again raises the argument that his appellate counsel was constitutionally ineffective. (ECF No. 1, PageID #: 12).

### i.      Judicial Duty to Strike for Cause

McClellan's argument concerning the trial court's duty to strike Juror 37 is baseless. Before addressing the merits, the Court notes that the Ohio Court of Appeals did not address McClellan's argument that the trial judge should have struck Juror 37 for cause (ECF No. 7-1, PageID #: 256),

even though McClellan fairly presented this argument in his motion to reopen and subsequent petition to the Supreme Court of Ohio. (ECF No. 7-1, PageID #: 201, 268-69). The Ohio Court of Appeals' omission does not bar review here, though, because a habeas court's review "cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely presented in petitioner's brief in state court." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

Considering the merits, it is true that a judge *may* strike a juror for cause. *State v. Smith*, 80 Ohio St. 3d 89, 105 (1997). But it is well settled in Ohio that "whether to disqualify a juror for cause is a discretionary function of the trial court [that is] not reversible on appeal absent [the trial court's] … abuse of discretion." *Id.* (cleaned up). When the State asked Juror 37 if she "[w]ould … be able to put … aside [her admittedly "very anti-drug" stance] … and possibly be fair [and] impartial in a trial … dealing with drugs," Juror 37 responded "yeah…" (ECF No. 7-2, PageID #: 518). Thus, Juror 37 stated under oath that she could put aside her personal opinion and be fair and impartial. Moreover, when "neither the defense nor the prosecution object[s] to [certain] … jurors for cause [,] … the trial judge should be very reluctant to intervene." *Smith*, 80 Ohio St. 3d at 105. Here, neither party sought to strike Juror 37 for cause, and McClellan has not demonstrated that the trial judge should have intervened *sua sponte*. Thus, McClellan has not shown that his appellate counsel was deficient or that he acted unreasonably by not raising this baseless issue on appeal. *Strickland*, 466 U.S. at 694). Accordingly, this portion of McClellan's argument is meritless.

### ii.    Trial Counsel's Duty to Peremptorily Strike Juror 37

McClellan's argument that his appellate counsel was constitutionally ineffective for not arguing that McClellan's trial counsel was constitutionally ineffective for not peremptorily striking Juror 37 is also meritless. The Ohio Court of Appeals' decision was not an unreasonable

application of the *Strickland* standard as it applies to ineffective-assistance-of-appellate-counsel claims. *Lockyer*, 538 U.S. at 75. The Ohio Court of Appeals noted that Juror 37 "stated [that] she would be able to put … aside [her anti-drug opinion] and be fair and impartial…" (ECF No. 7-1, PageID #: 256). It then noted that "decisions on the exercise of peremptory challenges are a part of trial strategy … [and] trial counsel, who observe[s] the jurors firsthand, is in a much better position to determine whether a prospective juror should be peremptorily challenged." (ECF No. 7-1, PageID #: 256 (citing *State v. Goodwin*, 84 Ohio St. 3d 331 (1999))). The federal courts agree: "Counsel, like the trial court, is granted 'particular deference' when conducting *voir dire*." *Keith v. Mitchell*, 455 F.3d 662, 676 (6th Cir. 2006) (quoting *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir.2001)). And "[a]n attorney's actions during *voir dire* are considered to be matters of trial strategy… A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Id.* (quotations omitted). McClellan has not shown that his trial counsel's decision to not use a peremptory strike on Juror 37 was so ill-chosen that it made the entire trial obviously unfair. Thus, McClellan has not demonstrated this his appellate counsel was deficient in failing to raise this claim. Nor has McClellan shown by a reasonable probability that the outcome of his appeal would have been different had his appellate counsel raised the issue on direct appeal. *Wilson*, 515 F.3d at 707.

*          *          *

In sum, the trial judge was not obligated to strike for cause Juror 37, nor was McClellan's trial counsel obligated to peremptorily strike Juror 37. Because neither argument has merit, McClellan fails to show that his appellate counsel was constitutionally ineffective for not raising either argument on direct appeal. Thus, Ground Six must be dismissed.

### G.     Ground Seven

In Ground Seven, McClellan asserts that both the trial judge and the State's prosecutor committed reversible misconduct. (ECF No. 1, PageID #: 14). He states that the trial judge "let detective … Volpe … tell the jury about looking [McClellan] up on C.J.I.S.[,] a Start County online record[s] program that people use to access … criminal records." (ECF No. 1, PageID #: 14). Because he raised this ground first in his motion to reopen his appeal under Ohio App. R. 26(B), the Court liberally construes Ground Eight to allege that McClellan's appellate counsel was constitutionally ineffective by failing to argue that McClellan's trial counsel was constitutionally ineffective in this regard.

Respondent argues that Ground Seven is procedurally defaulted because it has never been "fairly presented … in the Ohio courts and no procedural mechanism remains available to present it." (ECF No. 7, PageID #: 80). Respondent notes that McClellan first raised this issue in his motion to reopen his appeal; thus, he must be arguing that his appellate counsel was ineffective in failing to raise this issue in his direct appeal. (ECF No. 7, PageID #: 80). Respondent also argues that McClellan has not established cause that would excuse his procedural default or demonstrated that the constitutional violation prejudiced his trial. (ECF No. 7, PageID #: 82-84).

The Court disagrees with Respondent—Ground Seven was fairly presented to the state courts, so it is not procedurally defaulted. "[T]o fairly present a claim to a state court, a petitioner must assert both its legal and factual basis." *Hale*, 2021 WL 1215793, at *15. Although McClellan provided only a cursory overview of the claim in his motion to reopen his appeal (ECF No. 7-1, PageID #: 202-03), the Ohio Court of Appeals considered this ground's merits and issued a merits

decision,[6] concluding that there was "no genuine issue as to whether [McClellan] was deprived of the effective assistance of counsel on appeal with regards to this argument." (ECF No. 7-1, PageID #: 257).

The Court concludes, though, that Ground Seven is meritless. The Ohio Court of Appeals correctly noted that McClellan moved under Ohio App. R. 26(B) to reopen his appeal because he felt that his appellate counsel was constitutionally ineffective. (ECF No. 7-1, PageID #: 251). It then articulated the standard under which Ohio Courts of Appeals review those motions, citing *Strickland*. (ECF No. 7-1, PageID #: 252). It correctly summarized the ineffective-assistance-of-counsel standard, stating that there must be "a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different." (ECF No. 7-1, PageID #: 252). It then correctly noted that the petitioner bears the burden of establishing a meritorious ineffective-assistance-of-appellate-counsel claim. (ECF No. 7-1, PageID #: 252). But the Ohio Court of Appeals, which stated that McClellan "cite[d] no instances of prosecutor misconduct in his motion" (ECF No. 7-1, PageID #: 252), incorrectly characterized McClellan's argument. The Court finds that McClellan did cite an instance of potential prosecutorial misconduct: eliciting potentially prejudicial testimony from Volpe about McClellan's prior criminal record, which was available on C.J.I.S.

Despite this mischaracterization, the Court concludes that McClellan's appellate counsel was not deficient by not raising this argument on direct appeal. The record demonstrates that

---

[6] The Ohio Court of Appeals did not address part of the underlying trial claim—that the judge was bias or committed misconduct—because "it is well-established that, pursuant to [Ohio Rev. Code §] 2701.03, the Chief Justice of the Supreme Court of Ohio has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced." (ECF No. 7-1, PageID #: 257). That portion of Ground Seven is procedurally defaulted. But as discussed more below, this is not relevant because Ground Seven fails on the merits.

McClellan's trial counsel objected to Volpe mentioning C.J.I.S. (ECF No. 7-2, PageID #: 709-10). The trial judge then called a sidebar, saying to McClellan's trial counsel, "Do you want me to do a corrective [instruction? S]ometimes by doing that I make [the impermissible testimony] more of an attention grabber." (ECF No. 7-2, PageID #: 710). Facing that choice, McClellan's trial counsel elected to withdraw the objection and move forward without piquing the jury's interest any further. (ECF No. 7-2, PageID #: 709-10). That was a tactical decision, and tactical decisions are presumptively valid. *Reed*, 468 U.S. at 13. McClellan has not demonstrated that that presumption should not apply here.

As such, the Court concludes that McClellan's appellate counsel was not deficient, nor has he shown that there is a reasonable probability that the result of the proceeding would have been different had counsel raised this on direct appeal. *Strickland*, 466 U.S. at 694). Thus, Ground Seven is meritless and it must be dismissed.

## H.     Ground Eight

In Ground Eight, McClellan simply alleges that he had "[i]neffective assistance of trial counsel." (ECF No. 1, PageID #: 16). He supports this ground by stating that "[t]he informer couldn't say that the bag of cocaine is the bag that he got from me. It was ma[r]ked all wrong. My Attorney could have argued [against its admission under] … Rule 29[,] but he waited for the judge to tell him to raise the Rule 29 motion and didn't put up any arguments." (ECF No. 1, PageID #: 16). Because he raised this ground first in his motion to reopen his appeal under Ohio App. R. 26(B), the Court liberally construes Ground Eight to allege that McClellan's appellate counsel was constitutionally ineffective by failing to argue that McClellan's trial counsel was constitutionally ineffective in this regard.

35

Respondent argues that McClellan has not "fairly presented" this argument to the state courts, either, because it was in the record during McClellan's direct appeal but McClellan did not raise it. (ECF No. 7, PageID #: 84). Respondent again notes that McClellan first raised this issue in his motion to reopen his appeal; thus, he must be arguing that his appellate counsel was ineffective in failing to raise this issue in his direct appeal. (ECF No. 7, PageID #: 84). Respondent also argues that McClellan has not established cause that would excuse his procedural default or demonstrated that his appeal is prejudiced despite the default. (ECF No. 7, PageID #: 84-88).

As with Ground Seven, the Court concludes that Ground Eight was fairly presented to the state courts; thus, it is not procedurally defaulted. Although it offered a short analysis, the Ohio Court of Appeals adjudicated this claim on the merits. (ECF No. 7-1, PageID #: 257). It noted that McClellan "fail[ed] to set forth why [he] is arguing [that his] appellate counsel was ineffective or why trial counsel was ineffective." (ECF No. 7-1, PageID #: 257). It then denied the claim.

The Court agrees with the Ohio Court of Appeals. McClellan has failed to show that he was denied effective assistance of counsel on appeal. He did not put forth any facts that support his ineffective-assistance-of-appellate-counsel argument in his motion to reopen his case; nor has he done so here. Because McClellan did not raise a viable argument, the Ohio Court of Appeals' decision was not an unreasonable application of the *Strickland* standard as it applies to ineffective-assistance-of-appellate-counsel claims. *Lockyer*, 538 U.S. at 75. Thus, Ground Eight is meritless and it must be dismissed.

## I.      Ground Nine

In Ground Nine, McClellan asserts that there was insufficient evidence to sustain his state court convictions. (ECF No. 1, PageID #: 17). He also asserts that his conviction was against the

manifest weight of the evidence. (ECF No. 1, PageID #: 17). The Court addresses each argument separately below.

### i.      Sufficiency of the Evidence

McClellan supports his insufficient-evidence argument by stating that "there were many holes in the [controlled buy] … that compromised the running of the informant." (ECF No. 1, PageID #: 17). McClellan's chief complaints concern 1) searching the informant and 2) marking the money use in the buy. (ECF No. 1, PageID #: 17). This is the only ground that McClellan brought up on direct appeal. (ECF No. 7-1, PageID #: 110-29). Respondent argues that McClellan's sufficiency argument is meritless because the evidence presented at trial establishes all of the elements of the criminal statute at issue. (ECF No. 7, PageID #: 93-95).

Federal habeas review is available for insufficient-evidence arguments. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Herrera v. Collins*, 506 U.S. 390, 401 (1993). For a federal habeas corpus court, the relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. This "inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera*, 506 U.S. at 402 (emphasis in original). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted).

"Because both the *Jackson v. Virginia* standard and AEDPA apply to [McClellan's sufficiency of the evidence claim], 'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; [and] second,

deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has explained the application of this two-step analysis as follows:

> First, we must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if the panel determines that there was sufficient evidence to convict Stewart. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that a rational trier of fact could find Stewart guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).

McClellan's insufficient-evidence argument is unpersuasive. The Ohio Court of Appeals interpreted[7] the elements of Ohio Rev. Code § 2925.03(A)(1)(C)(4)(f) like so:

> To find appellant guilty of trafficking in cocaine in violation of R.C. 2925.03(A)(1)(C)(4)(f) as alleged in the indictment, the trier of fact would have to find appellant knowingly sold or offered to sell a controlled substance or a controlled substance analog in an amount equal or exceeding twenty-seven grams, but less than one hundred grams, of cocaine.

The Court finds that the State sufficiently demonstrated those elements. First, Thomas testified that, "when he made a phone call to [McClellan, McClellan] told him that he would sell him drugs." (ECF No. 7-1, PageID #: 155). Thomas then testified that "[w]hen [he] went to [McClellan's] house, [McClellan] let him in, he purchased one ounce of cocaine, and left. Thomas testified [that] he purchased the cocaine directly from [McClellan]. Thomas identified [McClellan] as the individual he purchased cocaine from the day of the controlled buy." (ECF No. 7-1, PageID

---

[7] "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

#: 156). Testimony from F.B.I. agents corroborated Thomas's testimony. (ECF No. 7-1, PageID #: 153-55). Testimony from Canton officer Michael Volpe, who surveilled the controlled buy, also corroborated Thomas's testimony. (ECF No. 7-1, PageID #: 156). Testimony from Jay Spencer, a crime lab technician, testified that the cocaine mixture at issue "contained 27.96 grams of a cocaine mixture." (ECF No. 7-1, PageID #: 156).

That testimony, when viewed in the light most favorable to the State, demonstrates that McClellan knowingly sold a controlled substance in an amount equal to or exceeding twenty-seven grams, but less than one hundred grams, of cocaine. Ohio Rev. Code § 2925.03(A)(1)(C)(4)(f). The Court concludes that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt on the facts in the record. *Jackson*, 443 U.S. at 319. The findings of fact are presumed to be correct, and McClellan has not rebutted that presumption. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Thus, the jury made a *rational* decision to convict McClellan. *Herrera*, 506 U.S. at 402 (emphasis in original).

In sum, the evidence is sufficient to convict under *Jackson*. Thus, McClellan's sufficiency-of-the-evidence argument is meritless, and it must be dismissed.

### ii.      Manifest Weight of the Evidence

McClellan also raises an against-the-manifest-weight-of-the-evidence argument, which he first raised in his direct appeal. (ECF No. 1, PageID #: 17). This argument summarily fails because "a manifest-weight-of-the-evidence argument is a state-law argument," which are non-cognizable in federal habeas review. *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007). Thus, McClellan's against-the-manifest-weight-of-the-evidence argument must be dismissed.

VII.    **Certificate of Appealability**

A.    **Legal Standard**

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

B.    **Analysis**

McClellan's grounds for relief are either procedurally defaulted, meritless, or non-cognizable. If the Court accepts the foregoing recommendation, then McClellan has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

VIII.   **Recommendation**

Because McClellan has presented only procedurally defaulted, meritless, or non-cognizable claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: April 27, 2021

*Carmen Henderson*

Carmen E. Henderson
United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).